UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

| | | |
|---|---|---|
| In re: | : | Case No.: 20-66885-lrc |
| | : | |
| **Alani Property Source Co., Inc.** | : | Chapter 11 |
| | : | |
| Debtor. | : | Judge Lisa Ritchey-Craig |
| _____ | : | |
| | : | CONTESTED MATTER |
| Blackstone Residential Operating | : | |
| Partnership LP | : | |
| | : | |
| | : | |
| Movant. | : | |
| _____ | : | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Blackstone Residential Operating Partnership LP, has

filed a Motion for Relief from the Automatic Stay and Relief *Nunc Pro Tunc* to February 4, 2020,

and related papers with the Court.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion

for Relief from the Automatic Stay and Relief *Nunc Pro Tunc* to February 4, 2020, at Courtroom

1202, Richard B. Russell Federal Building and U.S. Courthouse, 75 Ted Turner Drive, SW,

Atlanta, GA 30303, at 10:05 a.m. on November 5, 2020.

Your rights may be affected by the court's ruling on these pleadings. You should read these

pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case.

(If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant

Case 20-66885-lrc    Doc 44    Filed 10/08/20    Entered 10/08/20 14:29:38    Desc Main
Document      Page 2 of 45

the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: United States Bankruptcy Court, Room 1340, 75 Ted Turner Drive, SW, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision is not rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

**GIVEN THE CURRENT PUBLIC HEALTH CRISIS, HEARINGS MAY BE TELEPHONIC ONLY. PLEASE CHECK THE "IMPORTANT INFORMATION REGARDING COURT OPERATIONS DURING COVID-19 OUTBREAK" TAB AT THE TOP OF THE GANB WEBSITE PRIOR TO THE HEARING FOR INSTRUCTIONS ON WHETHER TO APPEAR IN PERSON OR BY PHONE.**

Respectfully submitted,

Dated: <u>October 8, 2020</u>                    <u>/s / C. Brent Wardrop</u>

2

C. Brent Wardrop, Esq.
GA Bar No. 553733
Quintairos, Prieto, Wood & Boyer, P.A.
10902 Crabapple Road
Roswell, Georgia 30075
Phone: (770) 650-8737
Fax: (770) 650-8797
brent.wardrop@qpwblaw.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

| | | |
|---|---|---|
| In re: | : | Case No.: 20-66885-lrc |
| | : | |
| **Alani Property Source Co., Inc** | : | Chapter 11 |
| | : | |
| Debtor. | : | Judge Lisa Ritchey-Craig |
| | : | |
| | : | CONTESTED MATTER |
| Blackstone Residential Operating | : | |
| Partnership LP | : | |
| | : | |
| | : | |
| Movant. | : | |

_____

## BLACKSTONE RESIDENTIAL OPERATING PARTNERSHIP LP'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND RELIEF FROM THE AUTOMATIC STAY *NUNC PRO TUNC* TO FEBRUARY 4, 2020 (REAL PROPERTY)

COMES NOW, Blackstone Residential Operating Partnership LP (the "Movant"), by and through its undersigned attorneys, and moves, pursuant to 11 U.S.C. § 362 for an Order for relief from the automatic stay, as well as relief from the automatic *nunc pro tunc* to February 4, 2020, with respect to the real property having an address of 1420 DONNELLY AVE SW, ATLANTA, GA 30310 (the "Property").  In further support of this Motion, Movant respectfully states:

1.    On June 2, 2020, Debtor filed the instant Chapter 11 Case.

2.    Movant is (or was) a Secured Creditor who held a Note and Security Deed for the Property.

3.      Since August 2019, Debtor has previously filed three (3) other bankruptcy cases that were all dismissed.  Specifically, Debtor filed:

      a.  Case No. 19-62482-lrc on August 8, 2019, which was dismissed on September 13, 2019;

      b.  Case No. 19-65703-lrc on October 1, 2019, which was dismissed on October 29, 2019; and

      c.  Case No. 20-60437-lrc on January 7, 2020, which was dismissed on February 27, 2020.

5.      All 3 prior cases were selected as Small Business cases by the Debtor in its bankruptcy petitions.

6.      Debtor (by and through its member and non-filing potential co-debtor, Aljermiah McKeithan) executed and delivered or were otherwise obligated with respect to a promissory note in the original principal amount of $304,000 ("Note"), with regard to the Property.[1]

7.      Pursuant to the Security Deed (the "Security Deed") as recorded with the Real Property Records of Fulton County, Georgia at Book 59693, Page 78, all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Security Deed were secured by the Property.  A true and correct copy of the Security Deed is attached as Exhibit A. An Assignment of Mortgage was recorded in the Public Records in favor of Movant at Deed Book 59820, Page 534.  A true and correct copy is attached hereto as Exhibit B.

---

[1] Mr. McKeithan is not a party to this proceeding, and to the best of undersigned's knowledge, no Order extending the stay to any co-debtor has been entered.

8.      The legal description of the Property is:

---

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT NO. 139, OF
THE 14TH DISTRICT, OF FULTON COUNTY, GEORGIA, IN THE CITY OF ATLANTA, BEING
LOT NO. 17, ROBERT F. COX PROPERTY SUBDIVISION, AS PER PLAT RECORDED IN PLAT
BOOK 8, PAGE 168, FULTON COUNTY, GEORGIA RECORDS, WHICH PLAT IS HEREBY
ADOPTED AND MADE A PART HEREOF BY REFERENCE THERETO FOR A MORE
COMPLETE DESCRIPTION OF SAID PROPERTY. AS MORE PARTICULARLY SHOWN ON
PLAT OF SURVEY PREPARED BY GEORGIA LAND SURVEYING CO., INC., DATED
JANUARY 28, 1975, SAID PROPERTY BEING IMPROVED PROPERTY NOW OR FORMERLY
KNOWN AS 1420 DONNELLY AVENUE, ACCORDING TO THE PRESENT SYSTEM OF
NUMBERING IN FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY
DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIN ON THE SOUTHWESTERLY SIDE
OF DONNELLY AVENUE 388 FEET SOUTHWESTERLY FROM CASCADE AVENUE, SAID
POINT OF BEGINNING ALSO BEING AT THE LINE DIVIDING LOTS NOS. 15 AND 17, SAID
SUBDIVISION AND PLAT; RUNNING THENCE SOUTHWESTERLY ALONG THE
SOUTHWESTERLY SIDE OF DONNELLY AVENUE 52 FEET TO AN IRON PIN AND LOT 19,
SAID SUBDIVISION AND PLAT; RUN THENCE SOUTHWESTERLY ALONG THE
NORTHWESTERLY LINE OF SAID LOT 19 A DISTANCE OF 78.3 FEET TO AN IRON PIN AND
LOT 16, SAID SUBDIVISION AND PLAT; RUN THENCE NORTHWESTERLY ALONG THE
NORTHEASTERLY LINE OF SAID LOT 16 A DISTANCE OF 50.5 FEET TO AN IRON PIN AND
SAID LOT 15; RUN THENCE NORTHEASTERLY ALONG THE SOUTHEASTERLY LINE OF
SAID LOT 15 A DISTANCE OF 94.5 FEET TO THE SOUTHWESTERLY SIDE OF DONNELLY
AVENUE AND THE POINT OF BEGINNING.

BEING TAX PARCEL ID#14-0139-0003-006-9.

BEING THE SAME PROPERTY AS THAT CONVEYED BY WARRANTY DEED TO TRUST
DATED SEPTEMBER 1, 2004, FROM SHARLENE AGARD-THOMAS TO JUNE MICHAEL-
WRAY, TRUSTEE OF THE 1420 DONNELLY ROAD LAND TRUST, DATED SEPTEMBER 1,
2004, AS RECORDED SEPTEMBER 21, 2004, AT DEED BOOK 38441, PAGE 19, FULTON
COUNTY, GEORGIA RECORDS.

9.      The Debtor and non-filing Co-Debtor defaulted on the Note and Security Deed, and

as such the Property was sold at foreclosure sale on February 4, 2020.  Movant was the highest

bidder at the foreclosure sale.  Thereafter, a Deed Under Power was recorded in the Real Property

Records of Fulton County at Deed Book 61235, Page 325.  A true and correct copy of the recorded

Deed Under Power is attached hereto as Exhibit C.

10.     Movant initiated dispossessory proceedings against Debtor prior to Debtor's filing

of the instant case, and wishes to proceed with such proceedings at the earliest opportunity.  In

addition, Movant seeks retroactive relief from the bankruptcy stay in an abundance of caution *nunc pro tunc* to the February 4, 2020, foreclosure sale.

## **BASIS FOR RELIEF**

11.    The Debtor has faced foreclosure and through successive and abusive filings has been able to avoid foreclosure sale of the Property and eventual eviction, up until the February 4, 2020, foreclosure sale on the Property.

11.    In order to confirm the foreclosure and complete the eviction relating to the Property, Movant seeks an Order for retroactive relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4), 11 U.S.C. § 362(n)(1), and/or any other provision providing for the relief sought herein.

## **MEMORANDUM OF LAW**

### **There have been Multiple Bankruptcy Filings Affecting the Property as Part of a Scheme to Delay, Hinder, and Defraud Secured Creditor**

Generally, 11 U.S.C. § 362(a) provides for an automatic stay of a foreclosure and eviction action against a debtor.  The general rule, however, is subject to exceptions.  For example, 11 U.S.C. § 362(d)(4), authorizes the court to grant relief from the automatic stay with regard to any act against real property by a creditor whose claim is secured by the real property in other cases filed within two years of entry of the order granting such relief "if the court finds that that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either (A) transfer of all or part ownership of … such real property without consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property.

Moreover, the Eleventh Circuit has long supported retroactive or *nunc pro tunc* relief from the automatic stay. *In re Albany,* 749 F.2d 670 (11th Cir. 1984) (Court held that bankruptcy courts may in appropriately limited circumstances grant retroactive relief from the automatic stay). In a situation involving a case that appears, on its face, to be a bad faith filing*, nunc pro tunc* stay relief is appropriate.  In cases where there is no realistic possibility of an effective reorganization and the debtor's intention is to merely delay or frustrate legitimate efforts of secured creditors to enforce their rights, courts in this district have found that dismissal of a petition for lack of good faith was appropriate. *See In re Midway Investments, Ltd*., 187 B.R. 382 (Bankr.S.D.Fla.1995); *In re Felberman,* 196 B.R. 678, 681 (Bankr.S.D.N.Y.1995) ("filing a bankruptcy petition merely to prevent foreclosure, without the ability or the intention to reorganize, is an abuse of the Bankruptcy Code." *See also In re Thomas*, 319 B.R. 910, 312 (M.D. Ga. 2004); *In re Fulks*, 48 B.R. 20 (N.D. Ga. 1984).

Here, since Movant first began foreclosure proceedings against Debtor and the Property, there have been 4 different bankruptcies filed in an effort to thwart Movant's foreclosure and eviction efforts: Case No. 19-62482-lrc on August 8, 2019, which was dismissed on September 13, 2019;  Case No. 19-65703-lrc on October 1, 2019, which was dismissed on October 29, 2019; Case No. 20-60437-lrc on January 7, 2020, which was dismissed on February 27, 2020; and the instant case, filed on June 2, 2020, which is still pending though was on the verge of dismissal earlier in the proceedings.  Movant is entitled not only to relief from the automatic stay since the there is no equity and the Property is not part of the estate (having been foreclosed upon on February 4, 2020), but is also entitled to relief *nunc pro tunc* to the date of that sale.  If this relief

is not granted as to the Property, there is no doubt that another bankruptcy will be filed like this Chapter 11 here to impede Movant's contractual rights and attempts to exercise its rights under state law.

To the extent Debtor argues that 11 U.S.C. § 362(d)(4) only applies to individuals and not Chapter 11 cases, then 11 U.S.C. § 362(n)(1) controls and compels the same result and relief to Movant.  It states, in pertinent part:

> Except as provided in paragraph (2), subsection (a) does not apply in a case in which the debtor—
>
> (A)  is a debtor in a small business case pending at the time the petition is filed;
> **(B)  was a debtor in a small business case that was dismissed for any reason by an order that became final in the 2-year period ending on the date of the order for relief entered with respect to the petition;**
> (C)  was a debtor in a small business case in which a plan was confirmed in the 2-year period ending on the date of the order for relief entered with respect to the petition; or
> (D) is an entity that has acquired substantially all of the assets or business of a small business debtor described in subparagraph (A), (B), or (C), unless such entity establishes by a preponderance of the evidence that such entity acquired substantially all of the assets or business of such small business debtor in good faith and not for the purpose of evading this paragraph.

Accordingly, pursuant to subparagraph (B), if a small business files successive bankruptcy petitions, the second (and, naturally, the third, fourth, etc.) filing does not have the automatic stay protections under § 362(a).  Here, all of Debtor's prior bankruptcies were small business filings, and all were dismissed by Order of the Court within 2 years of the instant filing.  Section 362(n) therefore applies and there was no stay in effect when Movant foreclosed on Debtor on February 4, 2020.  The foreclosure sale was thus valid.  Movant simply seeks *nunc pro tunc* relief in an

abundance of caution.

WHEREFORE, Blackstone Residential Operating Partnership LP, respectfully requests that this Court:

A.      Enter an Order granting relief from the automatic stay, permitting Movant to exercise its state law remedies with regard to eviction;

B.      In addition, or in the alternative, enter an Order granting relief from the automatic stay *nunc pro tunc* to February 4, 2020; and

C.      Make such Order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code;

D.      Allow direct communications between Movant, its successors and assigns, and Debtor in connection with proceeding against the Property including, but not limited to, notices required by state and federal law and communications to offer and provide information with regard to eviction proceedings;

E.      Award attorneys' fees and costs for representation in this proceeding;

F.      Waive the 14-day stay described by Bankruptcy Rule 4001(a)(3); and

G.      Grant such other relief as the Court deems proper.

Dated: October 8, 2020

Respectfully submitted,

*/s / C. Brent Wardrop*
C. Brent Wardrop, Esq.
GA Bar No. 553733
Quintairos, Prieto, Wood & Boyer, P.A.
10902 Crabapple Road

Roswell, Georgia 30075
Phone: (770) 650-8737
brent.wardrop@qpwblaw.com

## CERTIFICATE OF SERVICE

I certify that I have caused to be served a copy of the foregoing was served by first class mail, postage prepaid or by CM/ECF electronic filing upon the parties listed below on this day.

Dated: <u>October 8, 2020</u>                    <u>/s / C. Brent Wardrop</u>
                                    C. Brent Wardrop, Esq
                                    GA. Bar. No. 553733


Copies Furnished To:

By CM/ECF Receipt:

**Scott B. Riddle**
Law Office of Scott B. Riddle, LLC
Suite 1800
3340 Peachtree Road, NE
Atlanta, GA 30326
404-815-0164
Fax : 404-815-0165
Email: scott@scottriddlelaw.com

**Jonathan S. Adams**
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303
(404) 331-4437
Email: jonathan.s.adams@usdoj.gov

By First Class Mail:

**Alani Property Source Co., Inc**
1428 Donnelly Ave SW
Atlanta, GA 30310

**SHAFRITZ & DEAN, LLC**
5825 Glenridge Drive
Building 2 Ste. 102
Atlanta, GA 30328
(404)255-8183

Deed Book 59693 Pg    78
Filed and Recorded Feb-05-2019 08:13am
2019-0108464
Georgia Intangible Tax Paid $0.00
**CATHELENE ROBINSON**
Clerk of Superior Court
Fulton County, Georgia

**Recording Requested by:**
Civic Financial Services, LLC

2019- 753
**And After Recording Return To:**
Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA 90278

# Security Deed, Assignment of Leases and Rents, Security Agreement, and Fixture Filing

Loan Number: 0119015764

### 1. Definitions

Words used in multiple sections of this document are defined below and other words are
defined in Sections 3.3, 3.10, 3.12, 3.17, 3.18, and 3.19. Certain rules regarding the usage of
words used in this document are also provided in Section 3.15.

"**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all
applicable final, non-appealable judicial opinions.

"**Borrower**" is Alani Property Source Co., a Georgia Corporation; BORROWER'S ADDRESS IS 716
FRASIER CIRCLE SE, Marietta, GA 30060; Borrower is the trustor under this Security Instrument.

"**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and
other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization.

"**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal,
telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a
financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfer initiated by telephone,
wire transfers, and automated clearinghouse transfers.

"**Escrow Items**" means those items that are described in Section 3.3.

"**Lender**" is CIVIC FINANCIAL SERVICES, LLC; Lender is a LIMITED LIABILITY COMPANY organized
and existing under the laws of CALIFORNIA; Lender's address is 2015 MANHATTAN BEACH BLVD
STE 106, REDONDO BEACH, CALIFORNIA 90278; Lender is the grantee under this Security
Instrument.

2300-1092 / 50171230                                              1

Deed Book **59693** Pg    **79**

"**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

"**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverage described in Section 3.5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

"**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

"**Note**" means the promissory note signed by Borrower and dated January 30, 2019. The Note states that Borrower owes Lender Three Hundred Four Thousand Dollars and Zero Cents Dollars (US$304,000.00) plus interest; Borrower has promised to pay interest on this debt in regular Periodic Payments and to pay the debt in full not later than February 01, 2020.

"**Periodic Payment**" means the regularly scheduled amount due for (i) interest under the Note, plus (ii) any amounts payable under Section 3.3 of this Security Instrument.

"**Property**" means the property that is described below under the heading "Transfer of Rights in the Property".

"**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation that governs the same subject matter. As used in this Security Instrument, "**RESPA**" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not quality as a "federally related mortgage loan" under RESPA.

"**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower:

| | |
|---|---|
| [] Condominium Rider | [] Planned Unit Development Rider |
| [] Revocable Trust Rider | [] Other: |
| [X]Other:Waiver of Borrower's Rights Rider | [] Other: |

"**Security Instrument**" means this document, which is dated January 30, 2019 together with all Riders to this document.

"**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**2.  Transfer of Rights in the Property**
This Security Instrument secures to Lender:

> (a)  the repayment of the Loan, and all renewals, extensions and modifications of the Note; and,

2WH-EKG / 3HT12.1H                                    2

Deed Book 59693 Pg 80

(b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

For this purpose, Borrower irrevocably grants and conveys to Lender and Lender's successors and assigns, with power of sale, the following described property located in the

STATE: GA

COUNTY: Fulton

| Type of Recording Jurisdiction | Name of Recording Jurisdiction | A.P.N. |
|---|---|---|
| County | Fulton | 14-0139-0003-006-9 |

Which currently has the address of: 1420 Donnelly Avenue SW, Atlanta, GA 30310

more fully described by the legal description attached as Exhibit A.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER REPRESENTS, WARRANTS AND COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**3.  Uniform Covenants**
Borrower and Lender covenant and agree as follows:

**3.1 Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges**
Borrower shall pay when due the Principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3.3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

2309.1062 / 501712.99                                    3

Deed Book 59693 Pg    81

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 3.14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but except as required by Applicable Law, Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**3.2 Application of Payments or Proceeds**
Except as otherwise described in this Section 3.2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.3 Funds for Escrow Items**
Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "**Funds**") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 3.5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 3.9.

2900 1162 / 501712 (ii)                      4

Deed Book 59693 Pg    82

These items are called "**Escrow Items.**" At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and if so required, such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3.3. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 3.8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 3.8 and pay such amount and Borrower shall then be obligated under Section 3.8 to repay to Lender any such amount so paid by Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 3.14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.3. Lender will apply certain RESPA escrow account requirements even though RESPA does not apply to Borrower's Loan.  Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise consistent with RESPA or in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds consistent with RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds consistent with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower consistent with RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage consistent with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower consistent with  RESPA, and

2304-1002 / 568712.10                                    5

Deed Book 59693 Pg    83

Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**3.4 Charges; Liens**
Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 3.4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**3.5 Property Insurance**
Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a onetime charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation

GMPI-BMG / 5817T2.IN                                    6

Deed Book 59693 Pg    84

to purchase any particular type or amount of coverage. Therefore, such coverage shall cover
Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the
contents of the Property, against any risk, hazard or liability and might provide greater or lesser
coverage than was previously in effect. Borrower acknowledges that the cost of the insurance
coverage so obtained by Lender might significantly exceed the cost of insurance that Borrower
could have obtained. Any amounts disbursed by Lender under this Section 3.5 shall become
additional debt of Borrower secured by this Security Instrument. These amounts shall bear
interest at the Note rate from the date of disbursement and shall be payable, with such
interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to
Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall
name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to
generally assign rights to insurance proceeds to the holder of the Note up to the amount of the
outstanding loan balance. Lender shall have the right to hold the policies and renewal
certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid
premiums and renewal notices. If Borrower obtains any form of insurance coverage, not
otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall
include a standard mortgage clause and shall name Lender as mortgagee and/or as an
additional loss payee and Borrower further agrees to generally assign rights to insurance
proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.
Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower
otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance
was required by Lender, shall be applied to restoration or repair of the Property, if the
restoration or repair is economically feasible and Lender's security is not lessened. During such
repair and restoration period, Lender shall have the right to hold such insurance proceeds until
Lender has had an opportunity to inspect such Property to ensure the work has been
completed to Lender's satisfaction, provided that such inspection shall be undertaken
promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or
in a series of progress payments as the work is completed. Unless an agreement is made in
writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall
not be required to pay Borrower any interest or earnings on such proceeds. Fees for public
adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance
proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not
economically feasible or Lender's security would be lessened, to the extent permitted by
Applicable Law, the insurance proceeds shall be applied to the sums secured by this Security
Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance
proceeds shall be applied in the order provided for in Section 3.2.

If Borrower fails to do so in a timely manner, Lender may file, negotiate and settle any available
insurance claim and related matters. If Borrower does not respond within 30 days to a notice
from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate
and settle the claim. The 30-day period will begin when the notice is given. In either event, or if
Lender acquires the Property under Section 5.1 or otherwise, Borrower hereby assigns to

2300-1042 / 501712.10                                       7

Deed Book 59693 Pg    85

Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**3.6 Preservation, Maintenance and Protection of the Property; Inspections**
Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or permit waste to be committed on the Property. Notwithstanding the fact that Borrower is not residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 3.5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**3.7 Borrower's Loan Application**
Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning the ABSENCE OF ANY OCCUPANCY OR USE OF THE PROPERTY AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER.

**3.8 Protection of Lender's Interest in the Property and Rights Under this Security Instrument**
If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has permitted the Property to remain vacant, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in

2390-1042 / 501712 10                         8

Deed Book 59693 Ps    86

court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 3.8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 3.8.

Any amounts disbursed by Lender under this Section 3.8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement, and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground or master lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

### 3.9 Mortgage Insurance

(a)     If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect, and Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. To the fullest extent permitted by Applicable Law, such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in

2300-1002 / 501782.01                                    9

Deed Book 59693 Pg    87

accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 3.9 affects Borrower's obligation to pay interest at the rate provided in the Note.

(b) Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

(c) Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

(d) As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance". Further:

   (1) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

   (2) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**3.10 Assignment of Miscellaneous Proceeds; Forfeiture**

(a) To the fullest extent permitted by Applicable Law, all Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

(b) If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. To the fullest

2MN-0902 / SHI712.99                              10

Deed Book 59693 Ps    88

extent permitted by Applicable Law, Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, then to the fullest extent permitted by Applicable Law, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 3.2.

(c)  In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

(d)  In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

(e)  In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, to the fullest extent permitted by Applicable Law, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

(f)  If Borrower fails to pursue recovery of Miscellaneous Proceeds in a diligent manner, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "**Opposing Party**" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

(g)  Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security

2300-1002 / 5/1712.10                                    11

Deed Book 59693 Pg    89

Instrument. Borrower can cure such a default if acceleration has not occurred by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

(h)     All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 3.2.

**3.11 Borrower Not Released; Forbearance By Lender Not a Waiver**

Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**3.12 Joint and Several Liability; Co-signers; Successors and Assigns Bound**

Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "**co-signer**"):

(a)     is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument;

(b)     is not personally obligated to pay the sums secured by this Security Instrument; and

(c)     agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 3.17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 3.18) and benefit the successors and assigns of Lender.

**3.13 Loan Charges**

Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, Property inspection and

2300-1002 / 501712.01               12

Deed Book 59693 Ps    90

valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits (and for purposes of making any such determination as to whether any interest exceeds the lawful maximum, it is understood and agreed that all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender), then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**3.14 Notices**
All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the address designated in the Note unless Borrower has designated a substitute notice address by no less than ten (10) days prior notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**3.15 Governing Law; Severability; Rules of Construction**
This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law,

2300-1002 / 50171510                                    13

Deed Book 59693 Pg    91

such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument:

(a)     words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender;

(b)     words in the singular shall mean and include the plural and vice versa; and

(c)     the word "may" gives sole discretion without any obligation to take any action.

**3.16 Borrower's Copy**
Borrower shall be given one copy of the Note and of this Security Instrument.

**3.17 Transfer of the Property or a Beneficial Interest in Borrower**
As used in this Section 3.17, "**Interest in the Property**" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 3.14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**3.18 Sale of Note; Change of Loan Servicer; Notice of Grievance**
The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "**Loan Servicer**") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions

2306 1002 / 501712.10                    14

Deed Book 59693 Pg    92

pursuant to this Security Instrument or that alleges that the other party has breached any
provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or
Lender has notified the other party (with such notice given in compliance with the
requirements of Section 3.14) of such alleged breach and afforded the other party hereto a
reasonable period after the giving of such notice to take corrective action. If Applicable Law
provides a time period which must elapse before certain action can be taken, that time period
will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and
opportunity to cure given to Borrower pursuant to Section 5.1 and the notice of acceleration
given to Borrower pursuant to Section 3.17 shall be deemed to satisfy the notice and
opportunity to take corrective action provisions of this Section 3.18.

### 3.19 Hazardous Substances

As used in this Section 3.19: (a) "**Hazardous Substances**" are those substances defined as toxic
or hazardous substances, pollutants, or wastes by Environmental Law and the following
substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides
and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and
radioactive materials; (b) "**Environmental Law**" means federal laws and laws of the jurisdiction
where the Property is located that relate to health, safety or environmental protection; (c)
"**Environmental Cleanup**" includes any response action, remedial action, or removal action, as
defined in Environmental Law; and (d) an "**Environmental Condition**" means a condition that
can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any
Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.
Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in
violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which,
due to the presence, use, or release of a Hazardous Substance, creates a condition that
adversely affects the value of the Property. The preceding two sentences shall not apply to the
presence, use, or storage on the Property of small quantities of Hazardous Substances that are
generally recognized to be appropriate to normal residential uses and to maintenance of the
Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand,
lawsuit or other action by any governmental or regulatory agency or private party involving the
Property and any Hazardous Substance or Environmental Law of which Borrower has actual
knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking,
discharge, release or threat of release of any Hazardous Substance, and (c) any condition
caused by the presence, use or release of a Hazardous Substance which adversely affects the
value of the Property. If Borrower learns, or is notified by any governmental or regulatory
authority, or any private party, that any removal or other remediation of any Hazardous
Substance affecting the Property is necessary, Borrower shall promptly take all necessary
remedial actions in accordance with Environmental Law. Nothing herein shall create any
obligation on Lender for an Environmental Cleanup.

### 3.20 Additional Property Subject to the Security Instrument

2500-1012 / 50171.2 DB

Deed Book 59693 Pg    93

In addition to the Property elsewhere herein described, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.

### 3.21 Use of Property; Compliance with Law
Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

### 3.22 Subordinate Liens
Except as permitted by Applicable Law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

### 3.23 Rent Loss Insurance
Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 3.5.

### 3.24 Assignment of Leases
Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this Section 3.24, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

### 3.25 Assignment of Rents; Appointment of Receiver; Lender in Possession
Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 5.1 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the

2309-1002 / 5817121h                               16

Deed Book 59693 Pg    94

Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless Applicable Law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 3.8.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

### 3.26 Security Agreement

This Security Instrument is a conveyance under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property. By executing and delivering this Security Instrument, Borrower hereby grants to Lender and Trustee, as security for Borrower's performance of its obligations under the Note, this Security Instrument and all of the ot    her loan documents, a security interest in the items described in Section 3.20 above to the fullest extent that such items may be subject to the Uniform Commercial Code.

### 3.27 Pledge of Monies Held

Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender, including, without limitation, any sums deposited in the escrow as provided in Section 3.3 above, insurance proceeds as provided in Section 3.5 above and Miscellaneous Proceeds as provided in Section 3.10 above, as additional security for Borrower's performance of its obligations under the Note, this Security Instrument and all of the other loan documents, until expended or applied as provided in this Security Instrument.

2599-1082 / 5687T12.16                                17

Deed Book 59693 Ps     95

**3.28 Cross-Default Provision**

Any breach or default by Borrower or any Affiliate of Borrower under any note or agreement to which Lender or any Affiliate of Lender is also a party (or has an interest) shall be a breach under this Security Instrument, and Lender may invoke any of the remedies permitted by this Security Instrument.

**3.29 Security Deed**

This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**4.   Balloon Payment Covenant**

Borrower and Lender further covenant and agree as follows:

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER WITH WHICH BORROWER HAS THIS LOAN, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

**5.   Non-Uniform Covenants**

Borrower and Lender further covenant and agree as follows:

**5.1 Acceleration; Remedies**

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 3.17 unless Applicable Law provides otherwise) or in the Note. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand, and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 5.1, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender must give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law.  Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines.  Lender or its designee may purchase the Property at any sale.

2306-1012 / 5017123|0

18

Deed Book 59693 Pg   96

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 5.1, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

This Section 5.1 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Section 6 below.

**5.2 Reconveyance**
Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security In-strument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

This Section 5.2 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Section 6 below.

**5.3 Use of Property**
BORROWER WILL AT NO TIME DURING THE TERM OF THE LOAN INHABIT THE PROPERTY. THE PROPERTY IS OWNED AND HELD BY BORROWER AS AN INVESTMENT PROPERTY. NONE OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER NOW OCCUPIES OR USES THE PROPERTY, AND NONE OF THEM HAS ANY PRESENT INTENTION TO OCCUPY OR USE THE PROPERTY IN THE FUTURE AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER. EACH OF BORROWER AND ITS OWNERS, EMPLOYEES AND OTHER AFFILIATES NOW OCCUPIES AND USES OTHER PROPERTY OR PROPERTIES AS SUCH PERSON'S PRINCIPAL OFFICE, RESIDENCE AND/OR SECOND HOME.

**6.  Obligations and Reliance; Further Assurances**
**6.1 Obligations and Reliance**
(a)      **Relationship of Borrower and Lender**.  The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Note, this Security Instrument and the other loan documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

23WNBMG / 564712.10                         19

Deed Book 59693 Ps    97

(b)    **No Reliance on Lender.** The members, general partners, principals and (if Borrower is a trust) beneficial owners of Borrower are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

(c)    **No Lender Obligations.** By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Note or the other loan documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

(d)    **Reliance.** Borrower recognizes and acknowledges that in accepting the Note, this Security Instrument and the other loan documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations made by Borrower herein and therein without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof; that the warranties and representations are a material inducement to Lender in accepting the Note, this Security Instrument and the other loan documents; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth herein and therein.

**6.2 Further Assurances**

(a)    **Recording of Security Instrument, etc.** Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other loan documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other loan documents, any note or deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

2500-0002 / 508712.10                                         20

Deed Book 59693 Ps     98

(b)    **Further Acts, etc.** Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender and Trustee the Property and rights hereby deeded, mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Applicable Law. Borrower, on demand, will execute and deliver and hereby authorizes Lender, following 10 days' notice to Borrower, to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements (including, without limitation, initial financing statements, amendments thereto and continuation statements) with or without the signature of Borrower as authorized by Applicable Law, chattel mortgages or other instruments, to evidence more effectively the security interest of Lender in the Property. Borrower also ratifies its authorization for Lender to have filed any like initial financing statements, amendments thereto and continuation statements, if filed prior to the date of this Security Instrument. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender pursuant to this Section 6.2(b). To the extent not prohibited by Applicable Law, Borrower hereby ratifies all acts Lender has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

(c)    **Changes in Tax, Debt Credit and Documentary Stamp Laws**

     (1)    If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the debt immediately due and payable.

     (2)    Borrower will not claim or demand or be entitled to any credit or credits on account of the debt for any part of the taxes or other charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the debt. If such claim, credit or deduction shall be required by law, Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the debt immediately due and payable.

2340-1002 / 5017123.19                  21

Deed Book 59693 Ps   99

(3)    If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other loan documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

(d)    **Replacement Documents.** Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other loan document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other loan document, Borrower will issue, in lieu thereof, a replacement Note or other loan document, dated the date of such lost, stolen, destroyed or mutilated Note or other loan document in the same principal amount thereof and otherwise of like tenor.

## 7 Indemnification; Waivers

### 7.1 Indemnification

(a)    **General Indemnification.** Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties (defined below) from and against any and all Losses (defined below) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following: (a) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (b) any use, nonuse or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (d) any failure of the Property to be in compliance with any Applicable Law; (e) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; or (f) the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the Loan evidenced by the Note and secured by this Security Instrument. Any amounts payable to Lender by reason of the application of this Section 8.1(a) shall become immediately due and payable and shall bear interest at the default rate from the date loss or damage is sustained by Lender until paid.

(b)    The term "**Losses**" shall mean any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense). The term "**Indemnified Parties**" shall mean (a) Lender, (b) any prior owner or holder of the Note, (c) any servicer or prior servicer of the Loan, (d) the officers, directors, shareholders, partners, members, employees and trustees of any of the foregoing, and (e) the heirs, legal representatives, successors and assigns of each of the foregoing.

2309-100C / 501712.00

22

Deed Book 59693 Ps  100

(c)   **Mortgage and/or Intangible Tax.** Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument, the Note or any of the other loan documents.

(d)   **Duty to Defend; Attorneys' Fees and Other Fees and Expenses.** Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties. Notwithstanding the foregoing, any Indemnified Parties may, in their sole discretion, engage their own attorneys and other professionals to defend or assist them, and, at the option of Indemnified Parties, their attorneys shall control the resolution of any claim or proceeding. Upon demand, Borrower shall pay or, in the sole discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

**7.2 Waivers**

(a)   **Waiver of Counterclaim.** Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Note, any of the loan documents, or any of Borrower's obligations thereunder.

(b)   **Marshalling and Other Matters.** To the extent permitted by law, Borrower hereby expressly waives:

   (1)   the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein; and,

   (2)   any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all persons to the extent permitted by Applicable Law.

(c)   **Waiver of Notice.** Borrower shall not be entitled to any notices of any nature whatsoever from Lender or Trustee except (a) with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Lender or Trustee to Borrower and (b) with respect to matters for which Lender or Trustee is required by Applicable Law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender or Trustee with respect to any matter for which

2300-1002 / 5017123b

Deed Book 59693 Pg 101

this Security Instrument does not specifically and expressly provide for the giving of notice by Lender or Trustee to Borrower.

(d) **Waiver of Statute of Limitations**. Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the debt or performance of its other obligations under this Security Instrument, the Note and the other loan documents.

(e) **Sole Discretion of Lender**. Wherever pursuant to this Security Instrument (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole discretion of Lender, except as may be otherwise expressly and specifically provided herein.

(f) **WAIVER OF RIGHT TO TRIAL BY JURY**. BORROWER HEREBY EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THE NOTE, THIS SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY.

(g) **Waiver of Homestead**. Borrower waives all rights of homestead exemption in the Property.

**8 Miscellaneous Provisions**
**8.1 No Oral Change**
This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**8.2 Liability**
If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

**8.3 Inapplicable Provisions**

2309-1002 / 301712.10

24

Deed Book 59693 Pg 102

If any term, covenant or condition of the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Note and this Security Instrument shall be construed without such provision.

**8.4 Duplicate Originals; Counterparts**

This Security Instrument may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Security Instrument may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Security Instrument. The failure of any party hereto to execute this Security Instrument, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

2300-1002 / 501712.10

**25**

Deed Book 59693 Ps 103

Signed, sealed and delivered in the presence of:

_____

Unofficial Witness

_____

Notary Public, Fulton County

**Alani Property Source Co., a Georgia Corporation**

By: _____  Date: 1/31/19

Name: Aljermiah McKeithan
Title: Member

26

Deed Book 59693 Ps 104

**Exhibit A**
**Legal Description**

Loan Number: 0119015764

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT NO. 139, OF THE 14TH DISTRICT, OF FULTON COUNTY, GEORGIA, IN THE CITY OF ATLANTA, BEING LOT NO. 17, ROBERT F. COX PROPERTY SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 8, PAGE 168, FULTON COUNTY, GEORGIA RECORDS, WHICH PLAT IS HEREBY ADOPTED AND MADE A PART HEREOF BY REFERENCE THERETO FOR A MORE COMPLETE DESCRIPTION OF SAID PROPERTY. AS MORE PARTICULARLY SHOWN ON PLAT OF SURVEY PREPARED BY GEORGIA LAND SURVEYING CO., INC., DATED JANUARY 28, 1975, SAID PROPERTY BEING IMPROVED PROPERTY NOW OR FORMERLY KNOWN AS 1420 DONNELLY AVENUE, ACCORDING TO THE PRESENT SYSTEM OF NUMBERING IN FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN ON THE SOUTHWESTERLY SIDE OF DONNELLY AVENUE 388 FEET SOUTHWESTERLY FORM CASCADE AVENUE, SAID POINT OF BEGINNING ALSO BEING AT THE LINE DIVIDING LOTS NOS. 15 AND 17, SAID SUBDIVISION AND PLAT; RUNNING THENCE SOUTHEASTERLY ALONG THE SOUTHWESTERLY SIDE OF DONNELLY AVENUE 52 FET TO AN IRON PIN AND LOT 19, SAID SUBDIVISION AND PLAT; RUN THENCE SOUTHWESTERLY ALONG THE NORTHWESTERLY LINE OF SAID LOT 19 A DISTANCE OF 78.3 FEET TO AN IRON PIN AND LOT 16, SAID SUBDIVISION AND PLAT; RUN THENCE NORTHWESTERLY ALONG THE NORTHEASTERLY LINE OF SAID LOT 16 A DISTANCE OF 50.5 FEET TO AN IRON PIN AND SAID LOT 15; RUN THENCE NORTHEASTERLY ALONG THE SOUTHEASTERLY LINE OF SAID LOT 15 A DISTANCE OF 94.5 FEET TO THE SOUTHWESTERLY SIDE OF DONNELLY AVENUE AND THE POINT OF BEGINNING.

BEING TAX PARCEL ID #14-0139-0003-006-9 ..

BEING THE SAME PROPERTY AS THAT CONVEYED BY WARRANTY DEED TO TRUST DATED SEPTEMBER 1, 2004, FROM SHARLENE AGARD-THOMAS TO JUNE MICHAEL-WRAY, TRUSTEE OF THE 1420 DONNELLY ROAD LAND TRUST, DATED SEPTEMBER 1, 2004, AS RECORDED SEPTEMBER 21, 2004, AT DEED BOOK 38441, PAGE 19, FULTON COUNTY, GEORGIA RECORDS.

APN: 14-0139-0003-006-9

27

GSCCCA.org - Image Index          Page 28 of 28
Case 20-66885-lrc    Doc 44    Filed 10/08/20    Entered 10/08/20 14:29:38    Desc Main
Document      Page 40 of 45

Deed Book 59693 Pg 105

GEORGIA                                               LOAN #:

GRANTOR: Alani Property Source Co.

LENDER: Civic Financial Services, LLC

DATE OF SECURITY DEED: January 31, 2019

## WAIVER OF BORROWER'S RIGHTS

     BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED-FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Alani Property Source Co.

By _____ (SEAL)
Aljermiah McKeithan, President

_____
WITNESS

STATE OF GEORGIA
COUNTY OF FULTON

Sworn to and subscribed before me this 31st day of January, 2019 by Aljermiah McKeithan, President of Alani Property Source Co..

_____ Personally Known
___ Produced Identification
Type and # of ID _____

_____
Signature Notary

_____
Name of Notary Typed, Stamped, or Printed
Notary Public, State of Georgia

### CLOSING ATTORNEY'S AFFIDAVIT

     Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

     In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower, I reviewed with and explained to the Borrower the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower of

Deed Book 59820 Page 534
Filed and Recorded 3/22/2019 5:27:00 PM
2019-0137901
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 8133149015
7067927936

Document Prepared by: P. Chastain/
HMC Assets, LLC
When recorded, please mail to:
**HMC Assets, LLC**
2015 Manhattan Beach Blvd., Suite 200
Redondo Beach, CA 90278
Ref ID: 0119015764/0888004698

**ASSESSOR'S Property Tax Parcel/ Account # 14-0139-0003-006**

---

### ASSIGNMENT OF SECURITY DEED

| **Name and Address of Assignor:** | **Name and address of Assignee:** |
|---|---|
| **HMC Assets, LLC solely in its capacity as Separate Trustee of Civic Holdings III Trust,** 2015 Manhattan Beach Blvd., Suite 200, Redondo Beach, CA 90278 | **Blackstone Residential Operating Partnership LP** 2825 E Cottonwood Pkwy, Ste 500 Salt Lake City, UT 84121 |

    **FOR VALUE RECEIVED,** the receipt and sufficiency of which is hereby acknowledged, the undersigned, **HMC Assets, LLC solely in its capacity as Separate Trustee for Civic Holdings III Trust,** "Assignor," whose address is above, does hereby grant, sell, assign, transfer and convey to **Blackstone Residential Operating Partnership LP,** "Assignee," whose address is above, all interest of the undersigned Assignor in and to the following described security deed (hereinafter, "Security Deed").

| | |
|---|---|
| **Date of Security Deed:** | 01/30/2019 |
| Executed by **(Mortgagor(s)):** | Alani Property Source Co., A AGEORGIA CORPORATION |
| To and in favor of **(Mortgagee):** | Civic Financial Services, LLC |
| **Filed of Record:** | On 02/05/2019 in Deed Book 59693 Page 78, as Doc # 2019-0108464 in the office of the Superior Court Clerk for Fulton County, Georgia. |
| **Property Address:** | 1420 Donnelly Avenue SW, Atlanta, GA 30310 |

**Given:** To secure a certain Promissory Note in the amount of $304,000.00 payable to Mortgagee.

    Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest and all rights accrued or to accrue under said Security Deed.

    **TO HAVE AND TO HOLD,** the same unto Assignee and unto its successors and assigns forever, subject only to the terms and condition of the above- described Security Deed.

    Assignor is the present holder of the above- described Security Deed.

Deed Book 59820 Page 535
Cathelene Robinson
Clerk of Superior Court

**IN WITNESS WHEROF**, this assignment was executed by the undersigned Assignor of this the 22nd day of March 2019.

HMC Assets, LLC solely in its capacity as
Separate Trustee of Civic Holdings III Trust

Vincent Ciardullo, Authorized Agent

Signed, sealed, and delivered in the presence of:

Witness

Print Name    Stephen Hiff

Witness

Print Name    James Kim

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of         California          ) ss
County of        Los Angeles        )

On  3|22|19  , before me, **P.M Chastain**, Notary Public, personally appeared **Vincent Ciardullo**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

P. M. CHASTAIN
Notary Public - California
Los Angeles County
Commission # 2275744
My Comm. Expires Feb 20, 2023

Deed Book 61235 Page 325
Filed and Recorded 02/26/2020 3:49:00 PM
2020-0105483
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 5872937114
7067927936

File No.: FAY-19-07184

RECORD AND RETURN TO:
**Rubin Lublin LLC**
3145 Avalon Ridge Place
Suite 100
Peachtree Corners, GA 30071
(770) 246-3300

PARCEL ID: 14-0139-0003-006-9

CROSS INDEX TO DEED BOOK 59693,
PAGE 78
INSTRUMENT NUMBER 2019-0103464,
FULTON COUNTY, GEORGIA RECORDS

STATE OF ___FL___

COUNTY OF __Hillsborough__

## DEED UNDER POWER

THIS INDENTURE, dated February 4, 2020, by ALANI PROPERTY SOURCE CO and ALJERMIAH MCKEITHAN ("Borrower") acting through his or her duly appointed agent and attorney in fact BLACKSTONE RESIDENTIAL OPERATING PARTNERSHIP LP ("Lender") as Party of the First Part, and BLACKSTONE RESIDENTIAL OPERATING PARTNERSHIP LP as Party of the Second Part:

W I T N E S S E T H:

WHEREAS, Borrower executed and delivered to CIVIC FINANCIAL SERVICES, that certain Security Deed dated January 30, 2019, and recorded February 5, 2019, in Deed Book 59693, Page 78, at Instrument Number 2019-0103464, Fulton County, Georgia Records, conveying the after-described property, as last transferred to Blackstone Residential Operating Partnership LP, by Assignment, if required, pursuant to O.C.G.A. §44-14-162, to secure the payment of a Promissory Note of even date therewith, in the original principal amount of Three Hundred Four Thousand and 00/100 dollars ($304,000.00); and

WHEREAS, default in the payment under said Note occurred, and whereas by reason of said default, Lender elected, pursuant to the terms of said Deed and Note, and declared the entire principal and interest immediately due and payable; and

WHEREAS, Lender did perform a diligent search of the bankruptcy records for each known Borrower and determined that Lender was not subject to an automatic stay in bankruptcy both at the time foreclosure proceedings commenced and the time the Property was sold; and

WHEREAS, the entire indebtedness remaining in default, and in accordance with the terms of said Security Deed, Lender did advertise said property for sale once a week for four (4) weeks immediately preceding the sale in the newspaper in Fulton County, Georgia, wherein the Sheriff carried his advertisement, namely Daily Report; and

WHEREAS, notice was given in compliance with Georgia Laws 1981, Volume I, Page 834, codified as O.C.G.A. §§ 44-14-162.2 and 44-14-162.4. The notice required was rendered by mailing a copy of the Notice of Sale Under Power that was submitted to the publisher of Daily Report, to the Borrower and any other "Debtor" (as defined by O.C.G.A. § 44-14-162.1) at least thirty (30) days prior to the foreclosure sale date of February 4, 2020; and

WHEREAS, Lender did expose said land for sale to the highest bidder for cash on the first Tuesday in February, 2020, within the legal hours of sale at the Fulton County Courthouse and offered said property for sale at public outcry to the highest bidder for cash when and where Party of the Second Part bid Two Hundred Twenty-Seven Thousand Five Hundred and 00/100 dollars ($227,500.00) and;

WHEREAS, said property was auctioned off to the Party of the Second Part for the

aforementioned sum of money in cash.

NOW, THEREFORE, in consideration of the premises and said sum of money and by virtue of and in the exercise of the power of sale contained in the Security Deed, the Party of the First Part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the Party of the Second Part, said Party's representatives, heirs, successors and assigns, the following described property:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT NO. 139, OF THE 14TH DISTRICT, OF FULTON COUNTY, GEORGIA, IN THE CITY OF ATLANTA, BEING LOT NO. 17, ROBERT F. COX PROPERTY SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 8, PAGE 168, FULTON COUNTY, GEORGIA RECORDS, WHICH PLAT IS HEREBY ADOPTED AND MADE A PART HEREOF BY REFERENCE THERETO FOR A MORE COMPLETE DESCRIPTION OF SAID PROPERTY. AS MORE PARTICULARLY SHOWN ON PLAT OF SURVEY PREPARED BY GEORGIA LAND SURVEYING CO., INC., DATED JANUARY 28, 1975, SAID PROPERTY BEING IMPROVED PROPERTY NOW OR FORMERLY KNOWN AS 1420 DONNELLY AVENUE, ACCORDING TO THE PRESENT SYSTEM OF NUMBERING IN FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIN ON THE SOUTHWESTERLY SIDE OF DONNELLY AVENUE 388 FEET SOUTHWESTERLY FROM CASCADE AVENUE, SAID POINT OF BEGINNING ALSO BEING AT THE LINE DIVIDING LOTS NOS. 15 AND 17, SAID SUBDIVISION AND PLAT; RUNNING THENCE SOUTHEASTERLY ALONG THE SOUTHWESTERLY SIDE OF DONNELLY AVENUE 52 FEET TO AN IRON PIN AND LOT 19, SAID SUBDIVISION AND PLAT; RUN THENCE SOUTHWESTERLY ALONG THE NORTHWESTERLY LINE OF SAID LOT 19 A DISTANCE OF 78.3 FEET TO AN IRON PIN AND LOT 16, SAID SUBDIVISION AND PLAT; RUN THENCE NORTHWESTERLY ALONG THE NORTHEASTERLY LINE OF SAID LOT 16 A DISTANCE OF 50.5 FEET TO AN IRON PIN AND SAID LOT 15; RUN THENCE NORTHEASTERLY ALONG THE SOUTHEASTERLY LINE OF SAID LOT 15 A DISTANCE OF 94.5 FEET TO THE SOUTHWESTERLY SIDE OF DONNELLY AVENUE AND THE POINT OF BEGINNING.

BEING TAX PARCEL ID#14-0139-0003-006-9.

BEING THE SAME PROPERTY AS THAT CONVEYED BY WARRANTY DEED TO TRUST DATED SEPTEMBER 1, 2004, FROM SHARLENE AGARD-THOMAS TO JUNE MICHAEL-WRAY, TRUSTEE OF THE 1420 DONNELLY ROAD LAND TRUST, DATED SEPTEMBER 1, 2004, AS RECORDED SEPTEMBER 21, 2004, AT DEED BOOK 38441, PAGE 19, FULTON COUNTY, GEORGIA RECORDS.

THIS PROPERTY IS NOW OR WAS FORMERLY KNOWN AS 1420 DONNELLY AVE SW, ATLANTA, GA 30310

Together with all rights, members and appurtenances thereto, also all the estate, right, title, interest, claim or demand of Party of the First Part, or said Party's representatives, heirs, successors and assigns, legal, equitable or otherwise whatsoever, in and to the same.

THIS CONVEYANCE IS SUBJECT TO all zoning ordinances; matters which would be disclosed by an accurate survey or by an inspection of the property; any outstanding taxes, including but not limited to ad valorem taxes, which constitute liens upon said property; all restrictive covenants, easements, rights-of-way and any other matters of record superior to said Security Deed.

TO HAVE AND TO HOLD the said property and every part thereof unto the Party of the Second Part and said Party's representatives, heirs, successors and assigns, to said Party's own proper use, benefit and behoof in FEE SIMPLE, in as full and ample a manner as said Party of the First Part or said Party's representatives, heirs, successors and assigns, did hold and enjoy the same.

IN WITNESS WHEREOF, Lender as Attorney in Fact for Borrower has affixed its hand and seal on this 24 day of February, 2020, to be effective as of the date first above written.

Signed, Sealed and Delivered
in the presence of:

FAY SERVICING, LLC AS ATTORNEY IN FACT FOR BLACKSTONE RESIDENTIAL OPERATING PARTNERSHIP LP AS ATTORNEY IN FACT FOR ALANI PROPERTY SOURCE CO and ALJERMIAH MCKEITHAN

By: _____ (L.S.)
Printed Name: Jeff E. Bonin
Title: Constraint Secretary

Unofficial Witness

Attest: _____
Printed Name: Joanna Dyer
Title: Assistant Secretary

Notary Public
(L.S.)

My Commission Expires: 9/20/22

(Notary Seal)

(Corporate Seal)

Notary Public State of Florida
Kim Kelly
My Commission GG 260434
Expires 09/20/2022